# EXHIBIT 1



# REGIONAL SEWAGE DISPOSAL SYSTEM LEASE

**Execution Copy**

# REGIONAL SEWAGE DISPOSAL SYSTEM LEASE

Between

## CITY OF DETROIT

And

## GREAT LAKES WATER AUTHORITY

Dated June 12, 2015

## TABLE OF CONTENTS

Page

ARTICLE I - DEFINITIONS .................................................................................2
    SECTION 1.1        Definitions.................................................................2
ARTICLE II - REPRESENTATIONS.....................................................................7
    SECTION 2.1        Representations of the City.....................................7
    SECTION 2.2        Representations of the Authority .............................8
ARTICLE III - LEASE OF LEASED SEWER FACILITIES ...................................9
    SECTION 3.1        Term of this Lease ..................................................9
    SECTION 3.2        Conditions Precedent to Effective Date ...................9
    SECTION 3.3        Lease of Leased Sewer Facilities; Assignment and Transfer
                     of Revenues..........................................................11
    SECTION 3.4        Lease Payment .....................................................13
    SECTION 3.5        Use and Deposit of Lease Payments......................14
    SECTION 3.6        Surrender of Leased Sewer Facilities ...................14
ARTICLE IV - ASSIGNMENT AND ASSUMPTION OF RIGHTS AND LIABILITIES .........15
    SECTION 4.1        DWSD Customer and Vendor Contracts; DWSD Sewer
                     Bonds ...................................................................15
    SECTION 4.2        DWSD Labor Contracts........................................16
    SECTION 4.3        Retirement Obligations.........................................16
    SECTION 4.4        General Assumption by Authority..........................17
ARTICLE V - OPERATION, INSURANCE AND IMPROVEMENT OF LEASED
SEWER FACILITIES.........................................................................................18
    SECTION 5.1        Operation of Leased Sewer Facilities ....................18
    SECTION 5.2        Insurance..............................................................19
    SECTION 5.3        Destruction or Taking of Leased Sewer Facilities.........19
    SECTION 5.4        Improvements to Leased Sewer Facilities ....................20
    SECTION 5.5        Liability of the Incorporating Municipalities for Authority
                     Costs and Expenses..............................................20
    SECTION 5.6        Adoption of Budget; Establishment of Rates for Use of
                     Leased Sewer Facilities.........................................21
    SECTION 5.7        Water and Sewer Services Agreement....................22
    SECTION 5.8        Sale or Disposition of Leased Sewer Facilities or Detroit
                     Local Sewer Facilities...........................................23
    SECTION 5.9        Miscellaneous Provisions Related to Operation,
                     Maintenance and Improvement of Leased Sewer Facilities. .........23
ARTICLE VI - EVENTS OF DEFAULT AND REMEDIES......................................24
    SECTION 6.1        Events of Default ..................................................24
    SECTION 6.2        Remedies..............................................................24
ARTICLE VII – COVENANTS OF THE CITY AND THE AUTHORITY ...............25
    SECTION 7.1        Covenants of the City.............................................25
    SECTION 7.2        Covenants of the Authority.....................................26
ARTICLE VIII – DISPUTE RESOLUTION ...........................................................26
    SECTION 8.1        Disputes; Resolution. ............................................26
    SECTION 8.2        Arbitration.............................................................27

SECTION 8.3        Appeals of Arbitration Awards and Decisions ..............................28
SECTION 8.4        Enforcement of Arbitration Awards and Decisions......................28
ARTICLE IX - MISCELLANEOUS...................................................................28
SECTION 9.1        Entry....................................................................................28
SECTION 9.2        Amendment to Lease ...........................................................28
SECTION 9.3        No Personal Liability ...........................................................28
SECTION 9.4        Notices ................................................................................29
SECTION 9.5        Entire Agreement ................................................................29
SECTION 9.6        Severability .........................................................................29
SECTION 9.7        No Assignment.....................................................................29
SECTION 9.8        Force Majeure ......................................................................29
SECTION 9.9        Execution in Counterparts....................................................29
SECTION 9.10       Waiver .................................................................................30
SECTION 9.11       Captions ..............................................................................30
SECTION 9.12       Applicable Law....................................................................30
SECTION 9.13       Quiet Enjoyment ..................................................................30
SECTION 9.14       Binding Effect......................................................................30


SCHEDULE A        Leased Sewer Facilities
SCHEDULE B        DWSD Sewer Bonds
SCHEDULE C        Permits
SCHEDULE D        Wholesale Customer Contracts
SCHEDULE E        Vendor Contracts
SCHEDULE F        Collective Bargaining Agreements
SCHEDULE G        Paragraph 24 of Bankruptcy Order

<u>REGIONAL SEWAGE DISPOSAL SYSTEM LEASE</u>

THIS REGIONAL SEWAGE DISPOSAL SYSTEM LEASE entered into on June 12, 2015, by and between the CITY OF DETROIT (the "City"), a home rule city organized and existing under the constitution and laws of the State of Michigan, and the GREAT LAKES WATER AUTHORITY (the "Authority"), a municipal authority and public body corporate organized and existing under and pursuant to the provisions of Act No. 233, Public Acts of Michigan, 1955, as amended ("Act 233").

WITNESSETH:

WHEREAS, a Memorandum of Understanding (the "MOU") was entered into on September 9, 2014, by the Emergency Manager and the Mayor of the City, the County Executive of each of Macomb County, Oakland County and Wayne County, and the Governor of the State, for the purpose of establishing a regional authority pursuant to Act 233 to operate, control and improve both the Water Supply System and Sewage Disposal System owned by the City and presently operated by DWSD (except the City local system infrastructure) and to lease the Water Supply System and Sewage Disposal System (except the City local system infrastructure) from the City for an initial term of forty (40) years; and

WHEREAS, pursuant to the MOU, the City and each wholesale customer of the Sewer System, through their respective ratepayers, shall retain complete responsibility (in the case of the City, in accordance with the terms of the Water and Sewer Services Agreement) for all obligations associated with their individual revenue requirements; and

WHEREAS, pursuant to the MOU and to resolutions approving the Authority's Articles of Incorporation adopted by the City Council of the City, the Board of Commissioners of Macomb County, the Board of Commissioners of Oakland County and the County Commission of Wayne County, the Authority has been incorporated for the purpose of, among other things, acquiring, owning, leasing, improving, enlarging, extending, financing, refinancing and operating a water supply system and a sewage disposal system, including a storm water collection and treatment system, or a combination of such systems; and

WHEREAS, Section 5 of Act 233 authorizes the Authority to acquire property for a sewage disposal system by lease and to hold, manage and control such property; and

WHEREAS, on September 9, 2014, pursuant to EM Order No. 34, the Emergency Manager for the City authorized the Mayor of the City to negotiate the terms and execute and deliver a lease for each of the Water Supply System and the Sewage Disposal System, an agreement between the City and the Authority relating to the operation, management and improvement of the City local system infrastructure, and a transition agreement consistent with the parameters established by the MOU, and to take such other actions as may be necessary or desirable to complete the transfer of the Water Supply and Sewage Disposal Systems as described in the MOU; and

1

WHEREAS, on November 12, 2014, an Order Confirming Eighth Amended Plan for the Adjustment of Debtor of the City of Detroit ("Confirmation Order") was entered (Docket No. 8272) confirming the Plan of Adjustment; and

WHEREAS, paragraph 38 of the Confirmation Order approved the MOU in all respects, and authorized the City to enter into, and take any action necessary to perform under or implement, the terms of the MOU and any final agreement resulting from the MOU creating the Authority subject to additional terms and conditions described therein; and

WHEREAS, as contemplated in the MOU, the City and the Authority desire to enter into this Lease providing for the City to lease the Leased Sewer Facilities and to transfer its interest in the Revenues to the Authority, subject to the terms and conditions set forth herein.

## ARTICLE I - DEFINITIONS

SECTION 1.1 Definitions.  In addition to the words and terms elsewhere defined in this Lease, the following words and terms as used in this Lease and the preambles hereto shall have the following meanings unless the context or use indicates another or different meaning.

(a)    "Act 94" means Act No. 94, Public Acts of Michigan, 1933, as amended from time to time.

(b)    "Applicable Laws" means all laws, rules, regulations, ordinances, permit and license requirements, and orders of courts, governmental officials and agencies of competent jurisdiction with respect to the Leased Sewer Facilities or which generally relate to the Leased Sewer Facilities.

(c)    "Authority Pension Pool" means that portion of the DWSD Pension Pool that is allocated to the Authority.

(d)    "Authority's Address" means 735 Randolph Street, Detroit, Michigan 48226, Attention: Chairperson, or such other address set forth in a written notice from the Authority to the City.

(e)    "Bankruptcy Order" means the order entered (Docket No. 7028) by the United States Bankruptcy Court for the Eastern District of Michigan on August 25, 2014 (In re City of Detroit, Michigan, Debtor, Case No. 13-53846).

(f)    "BC Note Obligation" means, collectively, the amounts required to be paid by DWSD pursuant to the Plan of Adjustment in respect of debt service on (i) the City of Detroit Financial Recovery Bonds, Series 2014B(1) and Series 2014B(2), dated December 14, 2014, and (ii) the City of Detroit Financial Recovery Bonds, Series 2014C, dated December 14, 2014, which bonds were issued to satisfy in whole or in part claims relating to the City's pension obligation certificates and post-retirement health benefits.

(g)    "Bonds" means, collectively, the DWSD Sewer Bonds being assumed by the Authority as provided in the Master Bond Ordinance and bonds or other evidences of indebtedness issued by the Authority under the Master Bond Ordinance pursuant to Act 94, all of

2

which are secured by a pledge of and a statutory lien upon the Net Revenues of the Sewer System.

      (h)   "Budget Stabilization Fund" means the fund to be established in the Master Bond Ordinance as described in Section 3.2(b)(iv).

      (i)   "Budget Stabilization Requirement" shall have the meaning given such term in the Water and Sewer Services Agreement.

      (j)   "Capital Improvement Program" means the ongoing program of capital improvements for the Leased Sewer Facilities, as the same may be modified from time to time by the Authority.

      (k)   "City Residual Costs" means costs and liabilities incurred by the City which are associated with (i) the lease of the Leased Sewer Facilities and the transfer and assignment of the DWSD contracts and DWSD employees to the Authority, including unemployment and separation costs (excluding salaries beyond required notice periods) related to DWSD employees who decline to transfer to the Authority, (ii) excess capacity resulting from the establishment by the Authority of separate capacity performing the same function during and for any period the Authority has contracted for such capacity from the City, to the extent agreed to by the City and the Authority, and (iii) claims against the City by third parties whose contracts or rights were transferred to and assumed by the Authority under the terms of this Lease.

      (l)   "City's Address" means City of Detroit Water and Sewerage Department, 735 Randolph Street, Detroit, Michigan 48226, Attention: Director, with a copy to City of Detroit, Office of the Mayor, Coleman A. Young Municipal Center, 2 Woodward Avenue, 11th Floor, Detroit, Michigan 48226, or such other address or addresses set forth in a written notice from the City to the Authority.

      (m)   "common-to-all" means the method or methods for allocating to wholesale customers of the Regional Sewer System and Retail Sewer Customers the cost of sewer service provided by the Regional Sewer System that benefits both wholesale customers and Retail Sewer Customers, which allocation is determined on a case-by-case analysis of the benefits derived by each customer class from such service.

      (n)   "Detroit Capital Improvement Program" means the ongoing program of capital improvements for the Detroit Local Sewer Facilities, as the same may be modified from time to time by the City.

      (o)   "Detroit Local Sewer Facilities" means those sewage disposal facilities, other than the Leased Sewer Facilities, existing on the Effective Date that are used to provide sewer service directly to Retail Sewer Customers.

      (p)   "Detroit Local Water Facilities" means those water supply system facilities, other than the Leased Water Facilities, existing on the Effective Date that are used to provide water service directly to Retail Water Customers.

(q)    "DWSD" means the Detroit Water and Sewerage Department, as in existence immediately prior to the Effective Date.

(r)    "DWSD-R" means the Detroit Water and Sewerage Department, as in existence on and after the Effective Date.

(s)    "DWSD Master Sewer Bond Ordinance" means Ordinance No. 18-01 adopted by the City Council of the City, as amended through the Effective Date, that authorized the issuance of the DWSD Sewer Bonds, as supplemented by the Trust Indenture, dated as of June 1, 2012, between the City and U.S. Bank National Association, as trustee, as amended through the Effective Date.

(t)    "DWSD Pension Pool" means that portion of the undivided interest in investments and the pension liabilities of the GRS Plan that is allocated to DWSD retirees, deferred retirees and active vested and non-vested members.

(u)    "DWSD-R Pension Pool" means that portion of the DWSD Pension Pool that is allocated to DWSD-R.

(v)    "DWSD Sewer Bonds" means all bonds and other evidences of indebtedness of the City secured by a pledge of and a statutory lien upon the Net Revenues of the Sewer System outstanding immediately prior to the Effective Date, as more fully described in Schedule B attached hereto.

(w)    "DWSD Water Bonds" means all bonds and other evidences of indebtedness of the City secured by a pledge of and a statutory lien upon the Net Revenues of the Water System outstanding immediately prior to the Effective Date, as more fully described in the Water Lease.

(x)    "Effective Date" means the date on which the conditions set forth in Section 3.2 have been satisfied, as determined by the Mayor of the City and a supermajority (5/6) vote of the Board of the Authority.

(y)    "Fiscal Year" means the period beginning on July 1 of each year and ending on June 30 of the following year.

(z)    "GRS" means the General Retirement System of the City.

(aa)   "GRS Plan" means the frozen defined benefit plan of the GRS in effect on the effective date of the Plan of Adjustment.

(bb)   "Incorporating Municipalities" means, collectively, the City, Macomb County, Oakland County and Wayne County, as the incorporating municipalities of the Authority.

(cc)   "Lease" means this Regional Sewage Disposal System Lease, as it may be amended or supplemented as provided herein.

4

(dd)   "Leased Sewer Facilities" means, collectively, all of the City's right, title and interest in and to that portion of the real and tangible personal property comprising a part of the Sewer System and owned by the City and providing sewer service to the wholesale customers of the Regional Sewer System and Retail Sewer Customers up to the point of connection to the Detroit Local Sewer Facilities, including without limitation the land, buildings, basins, pump stations, outfalls, storage facilities, other structures, fixtures (including screens, meters, control gates, interceptors and collection lines), and improvements, and real property interests such as easements, access rights, rights of way, permits, licenses and leases, all as more fully set forth in Schedule A attached hereto (the "Real Property"), and any and all tangible personal property such as machinery, equipment, vehicles, furniture, office equipment, software, hardware, security systems, communications systems, other information technology systems and inventory used in connection with the Real Property, including without limitation the personal property that is described in Schedule A attached hereto (the "Personal Property").   Leased Sewer Facilities include all improvements and additions to and replacements of the foregoing described Real Property and Personal Property, but do not include the Detroit Local Sewer Facilities.

(ee)   "Leased Water Facilities" means, collectively, all of the City's right, title and interest in and to that portion of the real and tangible personal property comprising a part of the Regional Water System and owned by the City and providing sewer service to the wholesale customers of the Regional Water System and Retail Water Customers up to the point of connection to the Detroit Local Water Facilities, all as more fully set forth in the Water Lease.

(ff)   "Lease Payment" means the annual payment required to be made by the Authority for the benefit of the City pursuant to Section 3.4 in consideration for the leasing of the Leased Sewer Facilities to the Authority and the absolute and irrevocable assignment and transfer to the Authority of the Revenues as provided herein and to be applied by the Authority in accordance with the Master Bond Ordinance.

(gg)   "Local Sewer System" means that portion of the Sewer System that provides sewer service directly to Retail Sewer Customers, which on the Effective Date consists of the Detroit Local Sewer Facilities.

(hh)   "Local Water System" means that portion of the Water System that provides water service directly to Retail Water Customers, which on the Effective Date consists of the Detroit Local Water Facilities.

(ii)   "Macomb County" means the Charter County of Macomb, Michigan.

(jj)   "Master Bond Ordinance" means the ordinance to be adopted by the Authority prior to the Effective Date, setting forth the terms and provisions under which Bonds may be issued, as amended and supplemented as provided therein.

(kk)   "Net Revenues" has the meaning given thereto in Act 94.

(ll)   "Oakland County" means the County of Oakland, Michigan.

5

(mm) "O&M Expenses" means for each Fiscal Year all expenses of administration and operation and the expenses for maintenance as may be necessary to preserve the Regional Sewer System or the Local Sewer System, as the case may be, in good repair and working order, including costs incurred by the City in connection with its service as agent pursuant to Article 2 of the Water and Sewer Services Agreement.

(nn) "Pension Obligation" means the amounts required to be paid over time by DWSD in respect of the frozen defined benefit plan of the GRS as provided in the Plan of Adjustment and the Bankruptcy Order.

(oo) "Plan of Adjustment" means the Eighth Amended Plan of Adjustment of the City as confirmed by order of the United States Bankruptcy Court for the Eastern District of Michigan entered on November 12, 2014 (In re City of Detroit, Michigan, Debtor, Case No. 13-53846).

(pp) "Prudent Utility Practices" means those practices, methods, techniques, standards and acts engaged in or approved by a significant portion of the regulated sewer utility industry in the United States or any of the practices, methods, techniques, standards and acts which, in the exercise of reasonable judgment in light of the facts known (or which a qualified and prudent operator could reasonably be expected to have known) at the time a decision is made, would have been expected to accomplish a desired result at a reasonable cost consistent with good business practices, reliability, safety and expedition, in each case related to the operation, maintenance and improvement of similar systems at utility facilities of the same or similar size and type as the Leased Sewer Facilities.

(qq) "Regional Sewer System" means that portion of the Sewer System that provides sewer service to the wholesale customers thereof and Retail Sewer Customers up to the point of connection to the Local Sewer System, which on the Effective Date consists of the Leased Sewer Facilities.

(rr) "Regional Water System" means that portion of the Water System that provides water service to the wholesale customers thereof and Retail Water Customers up to the point of connection to the Local Water System, which on the Effective Date consists of the Leased Water Facilities.

(ss) "Retail Sewer Customers" means those individual customers located within and outside the City that receive sewer service directly from the Detroit Local Sewer Facilities.

(tt) "Retail Water Customers" means those individual customers located within and outside the City that receive water service directly from the Detroit Local Water Facilities.

(uu) "Retail Revenues" means Revenues collected from Retail Sewer Customers.

(vv) "Revenues" means the revenues, including the Retail Revenues, of the Authority from the Sewer System, which shall be construed as defined in Act 94, and shall

include all moneys collected directly or indirectly by the Authority, or the City as agent for the Authority, under the Water and Sewer Services Agreement and required to be deposited into the Receiving Fund established under Section 502 of the Master Bond Ordinance.

(ww) "Sewer System" means the City's sewage disposal system as existing immediately prior to the Effective Date, which consists on the Effective Date of the Regional Sewer System and the Local Sewer System.

(xx) "Shared Services Agreement" means the Shared Services Agreement between the City and the Authority relating to the provision of services by the City to the Authority with respect to the Regional Water System and the Regional Sewer System, and the provision of services by the Authority to the City with respect to the operation and management of the Detroit Local Water Facilities and the Detroit Local Sewer Facilities, as it may be amended and supplemented as provided therein.

(yy) "State" means the State of Michigan.

(zz) "Water and Sewer Services Agreement" means the Water and Sewer Services Agreement, dated June 12, 2015, between the City and the Authority relating to the provision of water service to Retail Sewer Customers and sewer service to Retail Sewer Customers, as it may be amended and supplemented as provided therein.

(aaa) "Water Lease" means the Regional Water Supply System Lease, to be effective on the Effective Date, relating to the lease of the Leased Water Facilities from the City to the Authority.

(bbb) "Water Lease Payment" means the annual payment required to be made by the Authority for the benefit of the City pursuant to the Water Lease.

(ccc) "Water System" means the City's water supply system as existing immediately prior to the Effective Date, which on the Effective Date consists of the Regional Water System and the Local Water System.

(ddd) "Wayne County" means the Charter County of Wayne, Michigan.

(eee) "WRAP Fund" means the Water Residential Assistance Program Fund to be established pursuant to the MOU, which shall be a fund independently-administered on behalf of the Authority to provide assistance to indigent residential customers throughout the Water System and the Sewer System.

## ARTICLE II - REPRESENTATIONS

SECTION 2.1 Representations of the City. The City represents and warrants to the Authority as follows:

(a) The City is a home rule city duly existing under the Constitution and laws of the State, and has the right, power and authority to enter into this Lease and perform its obligations hereunder.

(b)   To the knowledge of the City, as set forth in a certificate of the DWSD Director and the DWSD Chief Administrative and Compliance Officer/General Counsel, the City has not mortgaged, pledged or subjected to any lien, charge or security interest any of the Leased Sewer Facilities nor has the City entered into any lease or easement agreement or created any other encumbrance with respect to any of the Leased Sewer Facilities that in each case would adversely affect the ability of the Authority to operate the Leased Sewer Facilities as provided in Section 5.1.

(c)   To the knowledge of the City, as set forth in a certificate of the DWSD Director and the DWSD Chief Administrative and Compliance Officer/General Counsel, there presently exists no material casualty loss or damage to the Leased Sewer Facilities that would prevent the Authority from operating the Leased Sewer Facilities as provided in Section 5.1.

(d)   To the knowledge of the City, as set forth in a certificate of the DWSD Director and the DWSD Chief Administrative and Compliance Officer/General Counsel, there are no claims, actions, suits, proceedings, loss events or investigations pending or, to the best of the City's knowledge, threatened against or affecting the Leased Sewer Facilities or the validity of this Lease, at law or in equity, or before or by any federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality which, if adversely determined against the City, would have a material adverse effect on the Leased Sewer Facilities, the Net Revenues of the Sewer System or the City's ability to enter into this Lease.

(e)   In connection with the Leased Sewer Facilities, to the knowledge of the City, as set forth in a certificate of the DWSD Director and the DWSD Chief Administrative and Compliance Officer/General Counsel, (i) there are no unresolved notices of violation, orders, claims, citations, complaints, penalty assessments, suits or other proceedings pending against the City which have been unresolved for a period of more than 30 days or which are not expected to be resolved within 30 days or such other period specified for cure which in each case could have a material adverse impact on the operation of the Leased Sewer Facilities if allowed to continue beyond that period and (ii) there is no investigation or review pending or threatened against the City by any governmental entity or third party with respect to any alleged violation of any federal, state or local environmental law, regulation, ordinance, standard, permit or order relating to the operation of the Leased Sewer Facilities which could have a material adverse impact on the operation of the Leased Sewer Facilities.

SECTION 2.2 Representations of the Authority.  The Authority represents and warrants to the City as follows:

(a)   The Authority has been duly incorporated and is validly existing as a municipal authority and public body corporate under Act 233, and has the right, power and authority to enter into this Lease and to perform its obligations hereunder.

(b)   There are no claims, actions, suits, proceedings or investigations pending against the Authority, or to the best of the Authority's knowledge, threatened, that would have a material adverse effect on the transactions contemplated or provided for in this Lease.

ARTICLE III - LEASE OF LEASED SEWER FACILITIES

SECTION 3.1 Term of this Lease.  The term of this Lease (the "Term") shall commence on the Effective Date and shall terminate on the later of the Initial Lease Termination Date or the Extended Lease Termination Date.  Until the Effective Date, which is contingent on the satisfaction of the conditions set forth in Section 3.2, this Lease shall not constitute a sale, lease or disposition of the Sewer System or any substantial part thereof, as contemplated by Section 19 of the Detroit Master Sewer Bond Ordinance.  This Lease shall initially terminate on the fortieth (40th) anniversary of the Effective Date (the "Initial Lease Termination Date").  Upon the issuance of Bonds with a final stated maturity date after the Initial Lease Termination Date, the Initial Lease Termination Date shall automatically, and without further action of the parties hereto, be amended to coincide with the date on which all of the Bonds have been paid or provision for payment of all of the Bonds has been made in accordance with the Master Bond Ordinance (the "Extended Lease Termination Date").

SECTION 3.2 Conditions Precedent to Effective Date.  The Effective Date shall be deemed to have occurred when all of the following conditions have been satisfied, as evidenced by a certificate signed by authorized officers of the City and the Authority:

(a)     This Lease, the Water Lease, the Water and Sewer Services Agreement and the Shared Services Agreement shall have been duly authorized, executed and delivered by the City and the Authority.

(b)     The effective date under the Water Lease shall occur on the same date as the Effective Date under this Lease.

(c)     The Master Bond Ordinance shall have been duly adopted by the Authority and shall be in full force and effect and shall contain the following provisions:

(i)     The rate covenant and the test for the issuance of additional bonds thereunder shall both conform to DWSD's existing coverage requirements of 1.20, 1.10 and 1.00 for senior lien, second lien and junior lien indebtedness, respectively;

(ii)     A flow of funds consistent with Act 94, the MOU and representations made by DWSD to certain holders of DWSD Sewer Bonds that agreed to purchase such DWSD Sewer Bonds following a tender thereof on September 4, 2014, in the following order of priority as required by Act 94:  (A) O&M Expenses of the Regional Sewer System and the Local Sewer System, and (B) debt service on all indebtedness payable from Net Revenues of the Sewer System before making deposits to other accounts in the flow of funds;

(iii)     A covenant to comply with the provisions of the Bankruptcy Order, including but not limited to paragraph 24 thereof which is attached hereto as Schedule G; and

(iv)     The establishment of a Budget Stabilization Fund, which shall be a restricted account held by the Authority under the Master Bond Ordinance.  The Budget shall be funded by Retail Revenues in an amount equal to the Budget Stabilization Requirement as provided in the Water and Sewer Services Agreement.  Moneys in the Budget Stabilization Fund

9

may be applied by the Authority in its discretion for any lawful purpose of the Sewer System as provided in the Water and Sewer Services Agreement. The deposit of Revenues in the Budget Stabilization Fund shall be subordinate to payment of O&M Expenses and the principal of and interest on the Bonds.

(d)    The ordinances required by Section 5.7(c) shall have been duly adopted by the Board of Water Commissioners of DWSD and the Authority, respectively, and shall be in full force and effect.

(e)    The Authority shall have secured all permits and other governmental approvals necessary to operate the Leased Sewer Facilities, which are set forth in Schedule C attached hereto.

(f)    DWSD shall have secured the consent of

(i)    U.S. Bank National Association, as the trustee for the holders of the DWSD Sewer Bonds, and the holders of not less than fifty-one percent (51%) in principal amount of the DWSD Sewer Bonds outstanding on the Effective Date to:

(A)    an amendment to the DWSD Master Sewer Bond Ordinance which amendment authorizes this Lease and certain of the transactions contemplated by this Lease;

(B)    a supplement to the Trust Indenture dated as of June 1, 2012, among the City, DWSD and U.S. Bank National Association, as trustee, which supplement authorizes this Lease and certain of the transactions contemplated by this Lease; and

(C)    the obligor on the DWSD Sewer Bonds owned by such holders being changed from the City to the Authority on the Effective Date, and in connection with such change in obligor the release and discharge of the City from any liability or other obligation to such holders of the DWSD Sewer Bonds and U.S. Bank National Association as the trustee therefor in connection with the DWSD Sewer Bonds, and

(ii)    U.S. Bank National Association, as trustee for the holders of the DWSD Water Bonds, and the holders of not less than fifty-one percent (51%) in principal amount of the DWSD Water Bonds outstanding on the Effective Date to:

(A)    an amendment to the master bond ordinance for the DWSD Water Bonds which amendment authorizes the Water Lease and certain of the transactions contemplated by the Water Lease;

(B)    a supplement to the Trust Indenture dated as of April 1, 2013, among the City, DWSD and U.S. Bank National Association, as trustee, which supplement authorizes the Water Lease and certain of the transactions contemplated by the Water Lease; and

(C)    the obligor on the DWSD Water Bonds owned by such holders being changed from the City to the Authority on the Effective Date, and in connection with such change in obligor the release and discharge of the City from any liability or other

obligation to such holders of the DWSD Water Bonds and U.S Bank National Association as the trustee therefor in connection with the DWSD Water Bonds.

Receipt of the foregoing consents shall be evidenced by a certificate to that effect of U.S. Bank National Association, as trustee for the DWSD Sewer Bonds and DWSD Water Bonds, respectively, delivered to the Authority, the City and DWSD.

      (g)     The Authority and the City shall have received (i) an opinion of Authority bond counsel to the effect that the lease of the Leased Sewer Facilities to the Authority and assumption by the Authority of the DWSD Sewer Bonds, will not, in and of themselves, materially impair the tax-exempt status of the interest on the DWSD Sewer Bonds, and (ii) confirmation from a nationally recognized rating agency then rating the DWSD Sewer Bonds that the rating assigned to the Bonds, after such assumption, is not less than the then-existing rating on the DWSD Sewer Bonds assigned by such rating agency.

      (h)     The Authority shall demonstrate the ability to issue at least One Dollar ($1.00) of additional indebtedness at each level of priority under the additional bonds tests described in (c)(i) above.

      (i)     The City and the Authority shall have each received (i) opinions of counsel for the City and the Authority to the effect that this Lease is valid, binding and enforceable with respect to the City and the Authority, respectively, and (ii) an opinion of counsel for DWSD that the rates for wholesale customers and the City adopted by DWSD for the Fiscal Year beginning July 1, 2015 are binding and effective.

      (j)     The City shall have received all necessary consents to the assignment of the wholesale customer contracts set forth in Schedule D.

      (k)     The Authority, the City and GRS shall have entered into the agreement described in Section 4.3(b).

If the foregoing conditions are not satisfied and the Effective Date has not occurred on or before January 1, 2016, this Lease shall be null and void and shall terminate immediately and the Authority shall consider a motion to dissolve as provided in Article 5A of the Articles of Incorporation of the Authority.

    SECTION 3.3 <u>Lease of Leased Sewer Facilities; Assignment and Transfer of Revenues</u>. In order to enable the Authority to acquire the Regional Sewer System under Act 233, and in consideration of the Lease Payment and other terms of this Lease, the City leases the Leased Sewer Facilities to the Authority and the Authority leases the Leased Sewer Facilities from the City for the Term. By virtue of this Lease, the City intends to convey to the Authority by lease a leasehold interest in all of the City's right, title and interest in and to the Leased Sewer Facilities in order to enable the Authority to operate the Leased Sewer Facilities as provided herein. The City and the Authority acknowledge that the description of the Leased Sewer Facilities set forth in Schedule A has been compiled from the best available information, has been reviewed by their and DWSD's respective staff and consultants and is believed to be reasonably complete and accurate. The City and the Authority agree to cooperate in continuously reviewing the use and

11

description of the Leased Sewer Facilities and in the event that it is determined that the description of the Leased Sewer Facilities needs to be amended to conform to the actual use of the Leased Sewer Facilities or to correct or update the description of the Leased Sewer Facilities to make it more accurate, the Director of DWSD or DWSD-R, as appropriate, and, before the Effective Date, the Mayor of the City or his designee, and the Director and Chairperson of the Authority are authorized to modify Schedule A as necessary by executing an amendment thereto to accomplish any of the foregoing purposes and such amendment shall become a part of this Lease; provided that no such amendment shall be delivered if the effect of such amendment is to impair the ability of the Authority to operate the Leased Sewer Facilities as provided herein.

Notwithstanding the foregoing, this Lease shall constitute a bill of sale from the City to the Authority pursuant to which the City conveys all of its right, title and interest in and to the Personal Property that is part of the Leased Sewer Facilities. In furtherance of such conveyance, the City agrees to cooperate with the Authority and to take such actions as are necessary to have title to all vehicles that are part of the Personal Property transferred to the Authority.

In acquiring the Regional Sewer System pursuant to this Lease, commencing on the Effective Date, the Authority is also acquiring for the Term, and for the Term, the City hereby absolutely and irrevocably sells, assigns, transfers and conveys to the Authority, and the Authority hereby purchases and acquires from the City (each, an "Assignment and Transfer"), (i) all of the City's right, title and interest in and to the Revenues, including Retail Revenues, in existence on the Effective Date, and (ii) all of the City's right, title and interest in and to the Revenues, including Retail Revenues, derived from the operation of the Sewer System on and after the Effective Date and through the end of the Term. The City and the Authority acknowledge and agree that (i) the Assignment and Transfer is intended to be a purchase by the Authority and an absolute sale by the City of the Revenues and not a lending transaction; (ii) the Assignment and Transfer is made without representation or warranty by, or recourse to, the City of any kind; (iii) the City does not have any right, option, duty or obligation of any kind to repurchase all or any portion of the Revenues; (iv) except in its capacity as agent for the Authority under the express terms of the Water and Sewer Services Agreement, on and after the Effective Date and until the end of the Term, the City has no control over the collection of, or administrative or servicing activities concerning, the Revenues; (v) the City is not required to make any servicing or other advances to the Authority in connection with the Revenues under the Water and Sewer Services Agreement or otherwise; (vi) the City is not granted any right to or interest in any of the Revenues; (vii) the Assignment and Transfer is treated as an acquisition under Statement No. 69 of the Governmental Accounting Standards Board; (viii) the Assignment and Transfer is not cancelable by the City or the Authority for any reason; (ix) except as set forth in the DWSD Master Sewer Bond Ordinance and the Master Bond Ordinance, there is no restriction on the Authority's ability to sell or pledge the Revenues; (x) all collections of Revenues received by the City in its capacity as agent under the Water and Sewer Services Agreement or otherwise shall be remitted to the Authority without significant delay (no later than 5 days after receipt) or any reduction in amount; and (xi) the Revenues collected by the City as agent for the Authority shall be segregated and held in trust by the City until remitted to the Authority and shall be subject to audit and verification by the Authority.

In addition, the City and Authority agree that (i) the Authority shall have the exclusive right to establish rates for sewer service to customers of the Sewer System, including Retail

Sewer Customers; (ii) the Authority may delegate, and through the Water and Sewer Services Agreement is delegating, its right to establish rates for sewer service to customers of the Sewer System to one or more agents, as it deems necessary or convenient; and (iii) directly or through an agent, the Authority shall have the exclusive right to charge and bill to and collect from such customers amounts for sewer services constituting the Revenues, including the Retail Revenues.

(a)     By virtue of this Lease, the Authority acquires, succeeds to and assumes the exclusive right, responsibility and authority (i) to occupy, operate, control and use the Leased Sewer Facilities, including all lands, buildings, improvements, structures, easements, rights of access, fixtures, equipment, materials, furnishings, all other personal property and all other privileges and appurtenances comprising or pertaining to the Leased Sewer Facilities and (ii) to establish rates for sewer service to customers of the Sewer System and, directly or through an agent, to charge and bill to and collect from the customers of the Sewer System, including Retail Sewer Customers, amounts constituting the Revenues, including the Retail Revenues.

(b)     On and after the Effective Date, the City shall be relieved from all further costs and responsibility arising from or associated with the control, operation and maintenance of the Leased Sewer Facilities, except as otherwise provided in this Lease or in the Shared Services Agreement.

SECTION 3.4 Lease Payment.

(a)     The Authority shall pay for the account of the City for use of the Leased Sewer Facilities during the Term, a Lease Payment in the annual amount of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000), payable monthly on an annualized basis on or before the first day of each month through the end of the Term. The Lease Payment and the Water Lease Payment shall aggregate the sum of Fifty Million Dollars per year, and are based on an initial allocation in the MOU of 45% to the customers of the Regional Water System and 55% to the customers of the Regional Sewer System. Such allocation shall be subject to review and adjustment by the Authority every three to five years consistent with the method of allocation of other common-to-all charges between the Regional Water System and the Regional Sewer System; provided that no such adjustment shall reduce the projected availability of Revenues below the level necessary to pay the principal of and interest on any Bonds issued to finance improvements to the Detroit Local Water Facilities and the Detroit Local Sewer Facilities below the level in anticipation of which such Bonds were issued.

(b)     The City acknowledges and agrees that it will forego future Lease Payments in the event that it withdraws from the Authority as an incorporating municipality under the Authority's Articles of Incorporation; provided however, that any such withdrawal will not terminate this Lease or affect the Assignment and Transfer, or affect the Revenues collected by the Authority.

(c)     The Authority acknowledges and agrees that it shall have no legal or equitable right to setoff, recoup or deduct any amounts from or otherwise reduce the amount of any Lease Payment.

SECTION 3.5 <u>Use and Deposit of Lease Payments</u>.

(a)     The City shall be authorized to direct the application of the Lease Payments paid by the Authority only for the following purposes, consistent with the flow of funds in the Master Bond Ordinance:

(i)     To pay the principal of and interest on Bonds issued to finance the cost of improvements to the Detroit Local Sewer Facilities; and

(ii)     To pay the City's share of the principal of and interest on Bonds issued to finance the cost of common-to-all improvements to the Leased Sewer Facilities; and

(iii)     To pay the cost of improvements to the Detroit Local Sewer Facilities.

(b)     The proceeds of all Lease Payments shall be deposited into the following funds and accounts established under the Master Bond Ordinance, as directed by the City:

(i)     For proceeds being used to pay the principal of and interest on Bonds issued to finance the cost of improvements to the Detroit Local Sewer Facilities, to the Bond Interest and Redemption Fund established for the appropriate priority of lien of such Bonds.

(ii)     For proceeds being used to pay the City's share of the principal of and interest on Bonds issued to finance the cost of common-to-all improvements to the Leased Sewer Facilities, to the Bond Interest and Redemption Fund established for the appropriate priority of lien of such Bonds.

(iii)     For proceeds being used to pay the cost of improvements to the Detroit Local Sewer Facilities, to the Detroit Local Improvement and Extension Account of the Improvement and Extension Fund.

(c)     The City acknowledges and agrees that the use of Lease Payments for the foregoing purposes is subject to the availability of Revenues therefor in accordance with the Master Bond Ordinance and that the use of Lease Payments for the purpose set forth in Section 3.5(a)(iii) shall be subordinate to the payment of principal of and interest on the Bonds.

SECTION 3.6 <u>Surrender of Leased Sewer Facilities</u>.  Upon the expiration of this Lease at the end of the Term, the Authority shall quit and surrender the Leased Sewer Facilities to the City, together with any improvements, enlargements, replacements or extensions thereof made by the Authority during the Term.

14

ARTICLE IV - ASSIGNMENT AND ASSUMPTION OF RIGHTS AND LIABILITIES

SECTION 4.1 DWSD Customer and Vendor Contracts; DWSD Sewer Bonds.

(a)     In connection with the execution and delivery of this Lease, and as of the Effective Date, the City hereby assigns and the Authority hereby assumes all of the City's rights and obligations under the following:

(i)     All DWSD wholesale customer contracts related to the Regional Sewer System and related contracts with wholesale customers, including without limitation those contracts set forth in Schedule D attached hereto, as amended from time to time until the Effective Date.

(ii)     Existing DWSD vendor contracts, including without limitation those contracts set forth in Schedule E attached hereto, as amended from time to time until the Effective Date.

(iii)     City Residual Costs.

(b)     As of the Effective Date, the Authority hereby assumes all of the City's obligations under the DWSD Sewer Bonds, including all the obligations to make payments of principal of and interest on the DWSD Sewer Bonds. The City hereby assigns, as of the Effective Date, any and all rights that the City has with respect to the DWSD Sewer Bonds. The DWSD Sewer Bonds shall be payable solely from the Net Revenues of the Sewer System and shall not constitute a full faith and credit obligation of the Authority. The provisions of the DWSD Master Sewer Bond Ordinance, as amended and restated by the Master Bond Ordinance, with respect to the outstanding DWSD Sewer Bonds being assumed by the Authority on the Effective Date shall constitute a contract between the Authority and the holders of the DWSD Sewer Bonds, and such provisions shall be enforceable by such holders against the Authority or any or all of its successors, by mandamus or any other appropriate suit, action or proceeding at law or in equity in any court of competent jurisdiction in accordance with law.

(c)     As of the Effective Date, the City hereby assigns and the Authority hereby assumes all of City's rights and obligations under the contracts with bond insurers and surety bond providers with respect to the DWSD Sewer Bonds.   The Authority agrees to provide continuing disclosure with respect to information within its control relating to the Authority, the Leased Sewer Facilities and the DWSD Sewer Bonds that the City would otherwise have had to disclose on an annual basis pursuant to continuing disclosure undertakings entered into by the City with respect to the DWSD Sewer Bonds.

(d)     It is the intent of the parties that the execution and delivery of this Lease and the foregoing assignment and assumption set forth in subsections (a) and (b) shall not in any way impair any contracts with wholesale customers, Retail Sewer Customers, vendors, holders of DWSD Sewer Bonds or other parties in privity of contract with the City with respect to the Leased Sewer Facilities. The City, acting through DWSD, shall be responsible for obtaining, and shall use its best efforts to obtain, all necessary consents to the assignment of the vendor contracts set forth in Schedule E.

15

SECTION 4.2 <u>DWSD Labor Contracts</u>.   The Authority shall be a successor employer for those DWSD employees who transfer their employment to the Authority, and the Authority shall assume and honor DWSD's collective bargaining agreements with respect to such employees set forth in Schedule F attached hereto.

SECTION 4.3 <u>Retirement Obligations</u>.

(a)     As further consideration for the acquisition of the Regional Sewer System pursuant to this Lease, the Authority shall be required to pay that portion of the Pension Obligation allocable to the Regional Sewer System (the "Authority Pension Obligation") and that portion of the BC Note Obligation allocable to the Regional Sewer System (the "Authority BC Note Obligation"). The City agrees that it is liable for and shall be required to pay that portion of the Pension Obligation allocable to the Local Sewer System (the "City Pension Obligation") and that portion of the BC Note Obligation allocable to the Local Sewer System (the "City BC Note Obligation").   Amounts due for the Pension Obligation and the BC Note Obligation shall be allocated between the Authority and the City on the basis that such amounts are payable with respect to employees of the Authority and the City, respectively. As provided in the MOU, in further consideration for entering into the Lease and acquiring a leasehold interest in the Leased Sewer Facilities and the Regional Sewer System, the Authority shall have the option to issue one or more series of Bonds under the Master Bond Ordinance in order to fund all or a portion of the Pension Obligation.

(b)     On or prior to the Effective Date, the Authority will enter into an agreement with the City and the GRS, which will set forth the net pension liability for the DWSD Pension Pool as of June 30, 2014, and pursuant to which the Investment Committee of the GRS will agree to provide to the Authority each year (i) a summary annual report that will continue to (A) track DWSD retirees, deferred retirees and active vested and non-vested members, pension benefits paid and pension liabilities separately from other GRS members and (B) allocate to DWSD-R and the Authority an undivided interest in administrative expenses and in investments in the GRS Plan, to enable the Authority to verify the appropriateness of allocations to the Authority, and (ii) an actuarial study that sets forth as of the year ending June 30 for which the study is performed the undivided interest in investments in the GRS Plan allocated to the DWSD Pension Pool, the DWSD-R Pension Pool and the Authority Pension Pool, respectively, and the net pension liability for the DWSD Pension Pool, the DWSD-R Pension Pool and the Authority Pension Pool, respectively.   For each Fiscal Year commencing from and after July 1, 2023, on its normal schedule for determining the current Fiscal Year's contributions to GRS, GRS shall determine whether the net pension liability on a market value basis for the Authority Pension Pool (the "Authority Net Pension Liability") is fully funded at 100%.  If the Authority Net Pension Liability is fully funded at 100% or more, no contributions for the current Fiscal Year will be required of the Authority. If the Authority Net Pension Liability is less than 100% funded, then the Authority shall make such level annual contributions to the GRS as necessary to amortize such shortfall over five (5) years at an interest rate equal to the then current GRS investment return assumption.   Except for the additional payments required by this subsection (b), if any, the Authority shall have no further liability whatsoever to the City or the GRS in connection with any other shortfalls that that may occur with respect to the GRS Plan. The Authority Net Pension Liability shall be calculated by an actuary in good standing using actuarial standards of the actuary industry.

16

SECTION 4.4 <u>General Assumption by Authority</u>. In addition to the assumption by the Authority of the liabilities set forth in Sections 4.1, 4.2 and 4.3, as of the Effective Date, the Authority hereby assumes, accepts and becomes liable for all other lawful obligations, promises, covenants, commitments and other requirements of the City in respect of the Leased Sewer Facilities, whether known or unknown, contingent or matured, and shall perform all of the duties and obligations and shall be entitled to all of the rights of the City in respect of the Leased Sewer Facilities under any ordinances, agreements or other instruments and under law. Consistent with this Article IV, this assumption includes, and there shall be transferred to the Authority all licenses, permits, approvals or awards related to the Leased Sewer Facilities, all grant agreements, all grant pre-applications, the right to receive the balance of any funds payable by third parties under the agreements, the right to receive any amounts payable by third parties to the City on the Effective Date and amounts paid to the City after the Effective Date, as well as the benefit of contracts and agreements, and all of the City's duties, liabilities, responsibilities and obligations with respect to the Leased Sewer Facilities, except for any obligations or liabilities being contested in good faith by the Authority until such time as resolved.

(a)    The assumptions, successions or transfers described under this Article IV shall include, but not be limited to, all of the following:

(i)    All financial obligations secured by the Net Revenues of the Sewer System, including the DWSD Sewer Bonds.

(ii)    Except for an amount equal to one month's O&M Expenses for the Local Sewer System, which shall remain with the City, all cash balances and investments relating to or resulting from the operation of the Sewer System, all funds held under the DWSD Master Sewer Bond Ordinance and related trust indenture for the DWSD Sewer Bonds, and all of the accounts receivable and choses in action arising from the operation of the Leased Sewer Facilities as well as all benefits of contracts and agreements relating thereto.

(iii)    All office equipment used primarily by the Authority in connection with the Regional Sewer System, including, but not limited to, computers, records and files, software, and software licenses required for financial management, personnel management, accounting and inventory systems, and general administration.

(iv)    Any other City Residual Costs.

(b)    All lawful actions, commitments and proceedings with respect to the Leased Sewer Facilities, including, but not limited to, revenue bond financings for which a notice of intent resolution has been adopted, of the City or DWSD made, given or undertaken before the Effective Date are ratified, confirmed and validated as of the Effective Date. At the option of the Authority, all actions, commitments or proceedings undertaken and all actions, commitments or proceedings of the City or DWSD in respect of the Leased Sewer Facilities in the process of being undertaken by, but not yet a commitment or obligation of, the City or DWSD in respect of the Leased Sewer Facilities may, from and after the Effective Date, be undertaken and completed by the Authority in the manner and at the times provided in this Lease and in any lawful agreements made by the City or DWSD prior to the Effective Date.

17

## ARTICLE V - OPERATION, INSURANCE AND IMPROVEMENT OF LEASED SEWER FACILITIES

SECTION 5.1 <u>Operation of Leased Sewer Facilities</u>. The Authority agrees to operate the Leased Sewer Facilities for the purpose of furnishing sewer service to its customers in accordance with Applicable Laws and Prudent Utility Practices, all in a manner so as to provide sewer service to customers in the same or an improved manner as was provided by DWSD immediately prior to the Effective Date (collectively, the "Performance Standards"). In connection therewith, the Authority shall pay all costs of operating, using, repairing, maintaining, replacing, enlarging, extending, improving, financing and refinancing the Leased Sewer Facilities, including by way of illustration and not by way of limitation, all capital costs, utility rates and charges, fees and other amounts due under existing contracts, taxes and special assessments, salaries and other employment costs, permits and license fees and rents. The Authority shall not cause or permit any waste, damage or injury to the Leased Sewer Facilities and shall keep the Leased Sewer Facilities in good condition and repair (reasonable wear and tear, obsolescence and damage by act of God, fire or other causes beyond the control of the Authority excepted).

(a)     The City designates the Authority as its agent for the purposes of applying for sewerage system construction permits under Part 41 of Act 451 of 1994, MCL 324.4101,*et seq.* ("Part 41") for repairs, replacements and improvements at the wastewater treatment plant and at the common to all pump stations comprising part of the Leased Sewer Facilities, and authorizes the Authority to file plans and specifications with the Michigan Department of Environmental Quality ("MDEQ") for all such projects.   The City hereby designates the Authority as its agent for applying for sewerage system construction permits under Part 41 for repairs, replacements and improvements to the Leased Sewer Facilities at new or existing combined sewer overflow control facilities and for sewage transportation and conveyance facilities located within the City, and shall furnish the Authority with a letter authorizing the Authority to file plans and specifications with the MDEQ for all such projects, on a project specific basis.

(b)     The City, acting through DWSD, administers and enforces an industrial pretreatment program approved by the MDEQ on June 26, 1997 in accordance with Rules 323.2301 – 323.2317 of the Michigan Administrative Code and the corresponding federal regulations set forth in 40 CFR Part 403 and is the "Control Authority" for the purposes of the industrial pretreatment program. The City shall do all things reasonable and necessary to retain its status as the Control Authority until the Authority adopts its own industrial pretreatment program and receives the MDEQ's approval of that program.   The Authority shall use its reasonable best efforts to submit an approvable industrial pretreatment program to the MDEQ by October 1, 2017. Until the Authority receives approval of its own industrial pretreatment program: (a) the City authorizes the Authority to act on its behalf and as its agent to administer and enforce DWSD's approved industrial pretreatment program and to carry out DWSD's rights and obligations as the Control Authority, including the right to bring enforcement actions in the name of DWSD; and (b) the Authority agrees to accept the foregoing authorization and to perform all of DWSD's rights and obligations as the Control Authority in accordance with the applicable requirements of law.    The parties understand and agree that the foregoing authorization of the Authority is in addition to and not in lieu of DWSD's rights and obligations

18

to act as the Control Authority. The City shall provide the Authority with a copy of DWSD's industrial pretreatment program ordinance and all other rules, permits, agreements, plans, lists and other documents in its possession related to or necessary for the administration and enforcement of the industrial pretreatment program.

(c)     The City acknowledges that its obligation to operate the Leased Sewer Facilities in accordance with Applicable Laws includes the obligation to comply with the provisions of NPDES Permit No. MI0022802 and Certificate of Coverage MIS040066 applicable to the Leased Sewer Facilities specified in Schedule C. Except to the extent caused by an act or omission of the City, the Authority shall be solely responsible for any noncompliance by the Leased Sewer Facilities with any Applicable Laws, including the correction of the noncompliance and payment of the costs thereof, and for the payment of any related fines, penalties, costs, losses or damages related thereto.

SECTION 5.2 Insurance. From and after the Effective Date, the Authority shall, at its own expense, keep the Leased Sewer Facilities insured against any casualty loss and shall also obtain and maintain public liability insurance (covering bodily and personal injury, property damage and contractual liability), automobile liability insurance and worker's compensation insurance for the operation of the Leased Sewer Facilities and the Regional Sewer System in commercially reasonable amounts, provided that the Authority shall not be required to carry a particular type of insurance coverage as set forth in this Section 5.2 during any period that such insurance is not available in the insurance market of the United States at commercially reasonable rates.

All such insurance shall name the City as an insured or an additional insured and as a certificate holder, as its interests may appear. Such coverage and policies shall not be materially modified or terminated without at least thirty (30) days' prior written notice to the City, unless comparable coverage is provided under the modified policy or in a replacement policy. Upon the City's request no more frequently than once a year, the Authority shall provide the City with copies of certificates of insurance showing the premiums fully paid and copies of the policies, including any endorsements.

The insurance required of the Authority by this Lease in the amounts, with the coverage and other features herein required, may be supplied by a fully funded self-insurance program of the Authority or a self-insurance pool in which the Authority is a participant; provided that such self-insurance program or pool will provide the coverage required herein.

SECTION 5.3 Destruction or Taking of Leased Sewer Facilities.

(a)     If during the Term, any portion of the Leased Sewer Facilities is damaged or destroyed by fire or other casualty, the Authority shall repair, restore, rebuild or replace the damaged or destroyed portion of the Leased Sewer Facilities and complete the same as soon as reasonably possible (subject to the adjustment and receipt of insurance proceeds, if any, and the Master Bond Ordinance), to at least the condition they were in prior to such damage or destruction, except for obsolescent facilities or changes in design or materials as may then be necessary to achieve the Performance Standards.

19

(b)    In the event of any taking of the Leased Sewer Facilities or any part thereof in or by condemnation or other eminent domain proceedings pursuant to any Applicable Laws, or by reason of the temporary requisition of the use or occupancy of the Leased Sewer Facilities or any part thereof by any governmental authority (each a "Taking"), the Authority shall promptly notify the City upon receiving notice of such Taking or commencement of proceedings therefor.  The Authority shall then, if requested by the City, file or defend its claim thereunder and prosecute the same with due diligence to its final disposition.  Subject to the terms of the Master Bond Ordinance, all proceeds or any award or payment in respect of any taking are hereby assigned and shall be paid to the Authority, and the Authority is permitted to take all steps reasonably necessary in its discretion to notify the condemning authority of such assignment.  Such award or payment shall be applied to the Leased Sewer Facilities as necessary to achieve the Performance Standards.

(c)    If the Leased Premises or any portion thereof shall be in whole or in part destroyed or damaged as a result of any cause whatsoever, or a Taking occurs with respect to the Leased Sewer Facilities or any portion thereof, there shall be no abatement, diminution or reduction in any Lease Payment payable hereunder.

(d)    The City agrees that it shall not commence any proceedings against the Leased Sewer Facilities that would constitute a Taking of all or any part of the Leased Sewer Facilities if the effect of such Taking is to render it impracticable for the Leased Sewer Facilities to furnish sewer service to the Authority's customers in accordance with the Performance Standards.

SECTION 5.4  Improvements to Leased Sewer Facilities.

(a)    During the Term, the Authority shall be entitled to make such rehabilitation of and replacements and improvements to the Leased Sewer Facilities as it determines to be necessary in order to keep the Leased Sewer Facilities in compliance with the Performance Standards. In connection therewith, the Authority shall for each Fiscal Year prepare and approve a Capital Improvement Program, which shall set forth the improvements to the Leased Sewer Facilities that the Authority proposes to undertake during the next five (5) Fiscal Years.

(b)    In addition, during the Term, the Authority shall review and revise as necessary the DWSD sewer master plan.  In reviewing the plan, the Authority shall use its best efforts to maximize utilization of the capacity in the Regional Sewer System so that economies of scale may be realized, shall take into account the needs of the Authority's service area in planning and operating the Regional Sewer System, shall strive to become the provider of choice for southeastern Michigan and shall consider incentives for customers to utilize the Regional Sewer System for their wastewater flow needs.

SECTION 5.5  Liability of the Incorporating Municipalities for Authority Costs and Expenses.    It is understood and agreed by the parties that each of the Incorporating Municipalities shall be under no obligation to pay any of the costs and expenses incurred by the Authority for the operation, maintenance, management, repair or improvement of the Leased Sewer Facilities pursuant to this Article V except for those costs and expenses which may be

properly allocable to each of the Incorporating Municipalities as a customer of the Regional Sewer System through the rates established by the Authority pursuant to Section 5.6.

SECTION 5.6 Adoption of Budget; Establishment of Rates for Use of Leased Sewer Facilities.

(a)    On or prior to the Effective Date, the Authority shall adopt a budget for the Regional Sewer System for the period from the Effective Date through June 30, 2016, which shall be based on a bi-furcation between the Regional Sewer System and the Local Sewer System of the budget adopted by DWSD relating to the Sewer System for the Fiscal Year beginning July 1, 2015. Commencing with the Fiscal Year beginning July 1, 2016, the Authority shall adopt a two-year budget for the Regional Sewer System for the following two Fiscal Years that sets forth budgeted Revenues and expenses for each such Fiscal Year. The budgeted expenses for each such Fiscal Year shall equal the sum of the projected expenses and revenue requirements for the Regional Sewer System for each such Fiscal Year (collectively, the "Authority Revenue Requirement"), including without limitation all of the following:

(i)    O&M Expenses of the Regional Sewer System;

(ii)    The amounts necessary to pay the principal of and interest on all Bonds and to restore any reserves therefor established in the Master Bond Ordinance;

(iii)    The Lease Payment, which shall be a common-to-all charge;

(iv)    The Authority Pension Obligation and the Authority BC Note Obligation;

(v)    The amount necessary to be deposited to the WRAP Fund, which shall be a common-to-all charge equal to 0.5% of the base budgeted operating Revenues for the Regional Sewer System for such Fiscal Year;

(vi)    The amounts needed to make the required deposits to the Authority Regional Extraordinary Repair and Replacement Account of the Extraordinary Repair and Replacement Reserve Fund and the Authority Regional Improvement and Extension Account of the Improvement and Extension Fund in the Master Bond Ordinance; and

(vii)    The amount necessary to satisfy the coverage ratios required by the rate covenant to be included in the Master Bond Ordinance (collectively, the "Rate Covenant").

(b)    The Authority shall for each Fiscal Year fix and approve rates and charges to its customers in an amount that is expected to produce Revenues sufficient to satisfy the Authority Revenue Requirement. In connection with the determination by the Authority of the rates and charges applicable to Retail Sewer Customers in the City for such Fiscal Year, the City shall receive a credit in the amount of $5,516,000, representing the amount due to the City pursuant to a settlement relating to the Sewer System in recognition of the City's ownership of the Sewer System and support of the rate structure for the Sewer System.

21

(c)     As provided in the MOU, through the Fiscal Year ending June 30, 2025, the Sewer System is assumed to experience annual increases in the Authority Revenue Requirement of not more than 4%; provided however, this limitation shall not be applicable if the Authority Revenue Requirement must increase beyond the 4% assumption in order to satisfy the Rate Covenant or to pay the cost of improvements to the Leased Sewer Facilities that are required to be made by Applicable Laws.

(d)     The City acknowledges that all Revenues received from customers in the City, including Revenues derived exclusively from the Local Sewer System, are the property of the Authority and will be deposited as received in the Receiving Fund in the Master Bond Ordinance and applied as provided in the Master Bond Ordinance, including amounts deposited in the Budget Stabilization Fund.  As a result, the City agrees to provide the Authority with a budget for the Local Sewer System as provided in the Water and Sewer Services Agreement.

SECTION 5.7 <u>Water and Sewer Services Agreement</u>.

(a)     The City and the Authority shall enter into the Water and Sewer Services Agreement.  The Authority, in consideration of the Lease and the City's assignment of the Revenues to the Authority, will provide sewer services to Retail Sewer Customers.  All Revenues, as a result, are the exclusive property of the Authority.  By virtue of the assignment set forth in the first paragraph of Section 3.3, the City and the Authority agree that the Authority shall have the right to charge, bill and collect directly from Retail Sewer Customers for water services provided by the Authority to such customers based upon rates established by the Authority.  The City acknowledges that (i) the Retail Revenues shall be included in and constitute part of the Net Revenues of the Sewer System and (ii) the City shall have no property interest in the Revenues prior to the end of the Term, which shall be the exclusive property of the Authority. The Water and Sewer Services Agreement provides that the City shall act as agent for the Authority with respect to the provision of water services to the Retail Sewer Customers of the City as set forth therein.

(b)     As provided in the Water and Sewer Services Agreement and the MOU, the City shall have the right to continue to operate and retain employees to operate, maintain, repair and improve the Local Sewer System and the Detroit Local Sewer Facilities, including capital improvements and repairs thereto.

(c)     Prior to the Effective Date, the City, acting through its Board of Water Commissioners, and the Authority shall each adopt ordinances that will authorize the Authority to take all such actions necessary to charge and collect rates and charges for sewer services as described in this Section 5.7.  Such rates and charges shall be a lien on the premises for which the services have been provided.  Amounts delinquent for six (6) months or more may be certified annually to the City's Board of Assessors to be entered upon the next tax roll against the premises to which the services have been rendered.  Such lien may be enforced by the City on behalf of the Authority or the Authority directly in the manner prescribed in the City Charter or by other applicable law for the enforcement of tax liens.

22

SECTION 5.8 <u>Sale or Disposition of Leased Sewer Facilities or Detroit Local Sewer Facilities</u>.

(a)     Subject to the Master Bond Ordinance, the Authority, following notice to the City, shall have the right to sell or dispose of any of the Real Property or Personal Property that constitutes part of the Leased Sewer Facilities if the Authority determines that such Real Property or Personal Property is not or is no longer needed or useful in connection with the operation of the Leased Sewer Facilities or that such sale or disposition will not impair the operating efficiency of the Leased Sewer Facilities or reduce the ability of the Authority to satisfy the Rate Covenant as provided in the Master Bond Ordinance.  To the extent necessary to accomplish such a sale of Personal Property, the Lease also constitutes a quit claim transfer by the City of any residual property rights it may have in and to such Personal Property.  The City shall cooperate with the Authority in arranging the execution and delivery of a deed for the disposition of any Real Property.  The Mayor of the City or his designee may execute any such deed or instrument of transfer.  The proceeds of any such sale shall be deposited in the Receiving Fund established by the Master Bond Ordinance.

(b)     If the City sells or disposes of any real or personal property that constitutes part of the Detroit Local Sewer Facilities that was paid for in whole or in part with common-to-all funds, the proceeds of such sale or disposition shall be paid to the Authority in the same proportion that common-to-all funds were used to pay the purchase price, for deposit in the Receiving Fund established by the Master Bond Ordinance.

(c)     In connection with the sale or disposition of any of the Leased Sewer Facilities or any of the Detroit Local Sewer Facilities that were paid for in whole or in part with common-to-all funds, the City and the Authority shall cooperate and use their best efforts to sell such property at market value, exchange such property for other property of similar value or sell such property as otherwise agreed to by the parties.

SECTION 5.9 <u>Miscellaneous Provisions Related to Operation, Maintenance and Improvement of Leased Sewer Facilities</u>.

(a)     The City shall assist the Authority to obtain an annual permit for permission to use streets, highways, alleys, and/or easements within the City for the purpose of operating and maintaining and constructing improvements to the Leased Sewer Facilities. In the event of such construction, the Authority shall request the City to execute such separate instruments granting rights-of-way in its streets, highways, and alleys as may be reasonably required by the Authority.  The Authority shall give the City notice of any construction work in the City.  The Authority shall comply with any of the City's ordinances that apply to the construction, and the City shall inform the Authority of the applicable ordinances. The Authority and the City shall meet to review the construction and its impact on their respective operations. The Authority shall restore all existing structures and/or improvements laying in the right-of-way of construction to as good a condition as before the construction took place.  The improvements shall become part of the Leased Sewer Facilities.

(b)     Should future construction by any federal, state or county agency require relocation of a wastewater interceptor, meter facility or other facility of the Leased Sewer

23

Facilities, the cost incurred by the Authority for such relocation, if not reimbursed by the entity requiring the relocation, will be charged in future rates as a common-to-all cost to all Regional Sewer System customers, or as a customer specific cost to a specific customer or customers for the relocation of a customer specific facility.

(c)     Subject to the provisions of Section 5.9(a) and to the extent that City has jurisdiction, the Authority shall be granted temporary and permanent easements, and shall be permitted to use the streets, alleys and highways within the City for the purpose of operating and maintaining and constructing improvements to the Regional Sewer System, including the relocation of wastewater interceptors, meter facilities or other Leased Sewer Facilities. This consent by the City is given in compliance with Article 7, Sec. 29 of the Michigan Constitution of 1963, provided that the Authority shall provide the City with a written explanation of the type of easement required and the duration thereof.

(d)     Where possible, each party shall give the other party access to towers and antennas under its respective jurisdiction for the purpose of transmitting information recorded in metering facilities. Access shall not be unreasonably denied by either party.

ARTICLE VI - EVENTS OF DEFAULT AND REMEDIES

SECTION 6.1 Events of Default.  The term "Event of Default" means, whenever used in this Lease, the occurrence of any one of the following events on or after the Effective Date:

(a)     The Authority's failure to pay any Lease Payment (without setoff, recoupment, or other deduction of any kind) when due.

(b)     The Authority's failure to fully perform and comply with any of the other terms, conditions or provisions of this Lease within ninety (90) days after delivery to the Authority of a written notice from the City specifying such failure.

(c)     The City's failure to fully perform and comply with any of the terms, conditions or provisions of this Lease within ninety (90) days after delivery to the City of a written notice from the Authority specifying such failure.

SECTION 6.2 Remedies.

(a)     If an Event of Default set forth in Section 6.1(a) or (b) occurs, the City, subject to Article VIII, shall have all rights and remedies available to the City at law or in equity, including specific performance.

(b)     If an Event of Default set forth in Section 6.1(c) occurs, the Authority, subject to Article VIII, shall have all right and remedies available to the Authority at law or in equity, including specific performance.

(c)     Notwithstanding anything else to the contrary in this Section 6.2, so long as Bonds are outstanding, neither the City nor the Authority shall have any right to terminate this Lease at any time prior to the end of the Term, whether or not an Event of Default has occurred.

(d)     The City's or the Authority's failure to insist upon the strict performance of any agreement, term, covenant or condition of this Lease or to exercise any right or remedy for breach of or Event of Default under this Lease shall not constitute a waiver of any such breach or Event of Default.  Similarly, the City's acceptance of full or partial Lease Payments during any such breach by or Event of Default attributable to the Authority shall not constitute a waiver of any such breach or Event of Default.  No waiver of any breach or Event of Default shall affect or alter this subsection and every term, covenant, condition and provision of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach or Event of Default.

(e)     Subject to Section 6.2(c) and Article VIII, each right and remedy provided in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or later existing at law or in equity either by statute or otherwise.  The City's or the Authority's exercise of any one or more of its rights or remedies shall not preclude the City's or the Authority's simultaneous or later exercise of any or all of its other rights or remedies hereunder.

## ARTICLE VII – COVENANTS OF THE CITY AND THE AUTHORITY

SECTION 7.1 <u>Covenants of the City</u>.  Throughout the Term, the City covenants and agrees as follows:

(a)     The City shall not create, assume or suffer to exist, directly or indirectly, any lien, encumbrance or security interest of any kind on the Leased Sewer Facilities or the Detroit Local Sewer Facilities.

(b)     The City shall take all action reasonably necessary to cure any defects in title to the Leased Sewer Facilities, and at the request of the Authority, shall grant any license, easement or right-of-way in connection with the Leased Sewer Facilities to the extent the Authority has not been empowered to take these actions.  The expense of curing any such title defects shall be borne by the customer class or classes to which the cost of such Leased Sewer Facilities was originally allocated or, if such allocation is not available, shall be borne by the Authority on a common-to-all basis.

(c)     The City shall provide or cause to be provided to that portion of the Leased Sewer Facilities situated within the jurisdictional limits of the City public services (including but not limited to police, firefighting, lighting and emergency services) at least at the same level of service provided to other utilities and governmental facilities in the City.

(d)     The City shall, to the extent reasonably requested by the Authority, adopt such environmental ordinances and regulations as are approved by the Authority from time to time in order for the Authority to comply with the Performance Standards.

(e)     The City shall, to the extent reasonably requested by the Authority, cooperate with and assist the Authority in assigning, transferring or obtaining, as the case may be, any permits that are necessary for the operation by the Authority of the Leased Sewer Facilities.

(f)     The City shall, to the extent reasonably requested by the Authority, grant the Authority the right and authority to receive any grant proceeds to which the City would otherwise be entitled in respect of the Leased Sewer Facilities, and to cooperate in all reasonable respects with the Authority in making application for such proceeds.

(g)     If, as of the Effective Date, the City has commenced planning or construction of capital improvements to any of the Leased Sewer Facilities, the City shall not withhold, condition or delay concurrence with any Authority action necessary to complete the capital improvements in accordance with its obligations under Applicable Laws.

SECTION 7.2 Covenants of the Authority.    Throughout the Term, the Authority covenants and agrees as follows:

(a)     The Authority shall not take any action to impair the rights or remedies of the holders of the DWSD Sewer Bonds; provided, however, for the avoidance of doubt the Authority is permitted to take actions permitted by the Master Bond Ordinance.  From and after the Effective Date, the Authority shall pay when due all of the principal of and interest on the DWSD Sewer Bonds, provided that such payments shall be payable solely from the Net Revenues of the Sewer System in accordance with the Master Bond Ordinance and shall not constitute a full faith and credit obligation of the Authority.

(b)     The Authority shall cooperate fully with the City in the implementation of the Detroit Capital Improvement Program, including the financing through the Authority of the Detroit Capital Improvement Program and in obtaining any permits necessary for the construction of the Detroit Capital Improvement Program.

(c)     The Authority will cooperate with the City in obtaining permits that are necessary for the operation of the Local Sewer System.

(d)     The Authority will not withhold the Lease Payment or Revenues required to pay the City's O&M expenses for the Local Sewer System, provided that such payment shall be made consistent with the flow of funds in the Master Bond Ordinance.

(e)     The Authority will cooperate with the City's efforts to make repairs and construct improvements to the Local Sewer System in the vicinity of the Leased Sewer Facilities.

(f)     The Authority shall provide at least 60 days' notice to and coordinate with the City any planned disposition of any of the Real Property which comprises a portion of the Leased Sewer Facilities or any of the Personal Property which comprises a portion of the Leased Sewer Facilities used by the City and the Authority pursuant to the Shared Services Agreement.

ARTICLE VIII – DISPUTE RESOLUTION

SECTION 8.1 Disputes; Resolution.

(a)     The Authority and the City shall each designate in writing to the other from time to time a representative who shall be authorized to resolve any dispute relating to the

26

subject matter of this Lease in an equitable manner and, unless otherwise expressly provided herein, to exercise the authority of such party to make decisions by mutual agreement.

(b)     The City and the Authority each agree (i) to attempt to resolve all disputes arising hereunder promptly, equitably and in a good faith manner and (ii) to provide each other with reasonable access during normal business hours to any and all non-privileged written records, information and data pertaining to any such dispute.

(c)     If any dispute relating to the subject matter of this Lease is not resolved between the City and the Authority pursuant to this Section 8.1 within 30 days (or such later date agreed to by the parties) from the date on which a party provides written notice to the other party of such dispute and of the notifying party's position on the disputed matter, then upon written notification by either party to the other party, such dispute shall be settled exclusively and finally by arbitration in accordance with Section 8.2. During the pendency of any dispute and until such dispute is resolved as provided in Section 8.2, the City and the Authority shall continue to operate under the terms of this Lease.

SECTION 8.2 Arbitration.

(a)     It is specifically understood and agreed that any dispute or claim arising under or relating to this Lease that cannot be resolved between the City and the Authority, including any matter relating to the interpretation or performance of this Lease, shall be submitted to arbitration irrespective of either the magnitude thereof or the amount in dispute.

(b)     Each arbitration between the City and the Authority shall be conducted pursuant to the Uniform Arbitration Act, Act No. 371, Public Acts of Michigan, 2012 ("Act 371"). In the event of any conflict between the provisions of this Agreement and Act 371, the provisions Act 371 shall prevail.

(c)     The arbitration shall be conducted before a panel composed of three arbitrators (the "Arbitration Panel"). Each party shall appoint an arbitrator, obtain its appointee's acceptance of such appointment and deliver written notification of such appointment and acceptance to the other party within 15 days after delivery of a notice of arbitration. The two arbitrators appointed by the City and the Authority shall jointly appoint the third (who shall be the chairperson), obtain the acceptance of such appointment and deliver written notification of such appointment within 15 days after their appointment and acceptance.

(d)     Any arbitration commenced hereunder shall be completed within 120 days after the appointment of the Arbitration Panel absent agreement of the City and the Authority to the contrary. Further, absent agreement of the City and the Authority or, upon request of one of the parties, an order of the Arbitration Panel to the contrary: (i) all discovery shall be completed within 60 days after the appointment of the Arbitration Panel; (ii) each party shall be limited to a maximum of 5 depositions; (iii) each deposition shall be completed within a maximum period of two consecutive 8-hour days; (iv) each party shall be limited to 2 expert witnesses; and (v) interrogatories shall be limited to a maximum of 50 single issues without sub-parts. The City and the Authority waive any claim to any damages in the nature of punitive, exemplary or statutory damages in excess of compensatory damages or otherwise expressly provided for

27

herein, and the Arbitration Panel is specifically divested of any power to award such damages. The Arbitration Panel shall have the power to award injunctive or other equitable relief. All decisions of the Arbitration Panel shall be pursuant to a majority vote. Any interim or final award shall be rendered by written decision.

(e)     If either the City or the Authority fails to appoint its arbitrator within 15 days after delivery of a notice of arbitration, or if the two arbitrators appointed cannot agree upon the third arbitrator within 15 days after appointment of the second arbitrator, then the required arbitrator(s) shall be appointed by the American Arbitration Association or as otherwise agreed by the City and the Authority.

(f)     No arbitrator shall be a past or present employee or agent of, or consultant or counsel to, either the City or the Authority or any affiliate of either the City or the Authority.

(g)     The Authority and the City shall each bear the out-of-pocket costs and expenses of their respective arbitrator, attorneys and witnesses, and they shall each bear one-half of the out-of-pocket costs and expenses of the chairperson of the Arbitration Panel and all administrative support for the arbitration.

SECTION 8.3 Appeals of Arbitration Awards and Decisions. The City or the Authority may appeal an award or decision issued by the Arbitration Panel for the reasons set forth in Section 23 of Act 371 (MCL 691.1703).

SECTION 8.4 Enforcement of Arbitration Awards and Decisions. The City or the Authority may enforce any awards or decisions of the Arbitration Panel issued under Section 8.2 pursuant to Section 22 of Act 371 (MCL 691.1702). The remedies provided in this Article VIII shall be the sole and exclusive remedies of the parties with respect to any claim, dispute or Event of Default under this Lease. The City and the Authority agree not to bring, or cause to be brought, in a court of law any action, proceeding or cause of action whatsoever with respect to any such claim, dispute or Event of Default, other than as necessary to enforce the award or decision of the Arbitration Panel as provided in this Section 8.4.

ARTICLE IX - MISCELLANEOUS

SECTION 9.1 Entry. The City, through its officers, agents, or employees, shall have the right to enter upon and inspect any of the Leased Sewer Facilities at such reasonable times upon reasonable notice as the City and the Authority may select for the purpose of verifying the Authority's compliance with its obligations under this Lease.

SECTION 9.2 Amendment to Lease. This Lease may be amended from time to time by agreement of the City and the Authority. Any such amendment shall not be effective unless the amendment is in writing and is executed by the Mayor of the City and the duly authorized officers of the Authority; provided, however, that this Lease shall not be subject to any amendment which would in any manner affect either the security for the Bonds or the prompt payment of the principal of and interest thereon.

SECTION 9.3 No Personal Liability. The covenants and obligations made, assumed by or imposed upon the City and the Authority in this Lease are those of the City or the Authority

and not of any agent, officer or employee of the City or any trustee, agent, officer or employee of the Authority in his or her individual capacity and no recourse shall be had for the payment of the Lease Payment or any other moneys required to be paid by this Lease or for the performance of any other obligation required of the City or the Authority under this Lease against any agent, officer or employee of the City or any trustee, agent, officer or employee of the Authority or any person executing or attesting to this Lease or the Master Bond Ordinance so long as such agent, officer or employee of the City or trustee, agent, officer or employee of the Authority or person executing or attesting to this Lease or the Master Bond Ordinance is acting in good faith and within the duly authorized scope of his or her duties.

SECTION 9.4 <u>Notices</u>.  All notices, certificates or other communications under this Lease shall be sufficiently given when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed to the City and the Authority, as the case may be, at the City's Address and the Authority's Address, respectively.  The City and the Authority may by written notice designate any further or different addresses to which subsequent notices, certificates or communications shall be sent.

SECTION 9.5 <u>Entire Agreement</u>.  This Lease contains all agreements between the parties with respect to the Leased Sewer Facilities, and there are no other representations, warranties, promises, agreements or understandings, oral, written or inferred, between the parties, unless reference is made thereto herein.

SECTION 9.6 <u>Severability</u>.  If any clause, provision or section of this Lease shall be ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such clause, provision or section shall not affect any of the remaining clauses, provisions or sections hereof.

SECTION 9.7 <u>No Assignment</u>.  Neither party may assign this Lease or any of its rights hereunder.

SECTION 9.8 <u>Force Majeure</u>.  Any delay or failure in the performance by either party hereunder shall be excused if and to the extent caused by the occurrence of a Force Majeure event. For purposes of this Lease, Force Majeure shall mean a cause or event that is not reasonably foreseeable or otherwise caused by or under the control of the party claiming Force Majeure, including acts of God, fires, floods, explosions, riots, wars, tornado, sabotage, terrorism, vandalism, accident, restraint of government, governmental acts, injunctions, labor strikes, other than those of the claiming party or its suppliers, that prevent the claiming party from furnishing the materials or equipment, and other like events that are beyond the reasonable anticipation and control of the party affected thereby, despite such party's reasonable efforts to prevent, avoid, delay, or mitigate the effect of such acts, events or occurrences, and which events or the effects thereof are not attributable to a party's failure to perform its obligations under this Lease.

SECTION 9.9 <u>Execution in Counterparts</u>.  This Lease may be executed in several counterparts, each of which shall be an original and all of which shall constitute the same instrument.

SECTION 9.10    Waiver.  The waiver by the City of any breach by the Authority of any term, covenant or condition hereof shall not operate as a waiver of any subsequent breach of the same or any other term, covenant or condition hereof.  The waiver by the Authority of any breach by the City of any term, covenant or condition hereof shall not operate as a waiver of any subsequent breach of the same or any other term, covenant or condition hereof.

SECTION 9.11    Captions.  The captions or headings in this Lease are for convenience only and in no way define, limit the scope or intent of any provision of this Lease.

SECTION 9.12    Applicable Law.  This Lease shall be governed in all respects, whether as to validity, construction, performance or otherwise, by the laws of the State.

SECTION 9.13    Quiet Enjoyment.  The City covenants that the Authority, upon compliance with the terms of this Lease, shall peacefully and quietly have and hold and enjoy the Leased Sewer Facilities for the term herein provided, subject to any and all rights of the City under this Lease.

SECTION 9.14    Binding Effect.  This Lease shall inure to the benefit of and be binding upon the respective parties hereto and their successors.

IN WITNESS WHEREOF, the CITY OF DETROIT and the GREAT LAKES WATER AUTHORITY have executed this Lease by its duly authorized officers as of the day and year first above written.

CITY OF DETROIT

By: _____

Its: Mayor

GREAT LAKES WATER AUTHORITY

By: _____

Its:  Chairperson

And: _____

Its:  Secretary

Approved on May 18, 2015 by City of Detroit Financial Review Commission

31

[Schedules A-C and E-G are omitted from this motion exhibit.]

SCHEDULE D

WHOLESALE CUSTOMER CONTRACTS AND RELATED CONTRACTS

The City and the Authority acknowledge that the following described contracts have been compiled from the best available information, have been reviewed by their and DWSD's respective staff and consultants and are believed to be complete and accurate. If it is determined after the execution and delivery of the Lease that the description of the contracts needs to be corrected through either the addition or deletion of one or more contracts, the Director of DWSD or DWSD-R, as appropriate, and the Director and the Chairperson of the Authority are authorized to modify this Schedule D as necessary by executing an amendment thereto on or prior to the Effective Date and such amendment shall become a part of this Schedule D.

<u>Sewer Wholesale Customers</u>

| <u>Contracts</u> | <u>Date of Contract</u> |
|---|---|
| City of Allen Park | 01/28/2015 |
| City of Center Line | 09/24/2014 |
| City of Dearborn | 01/28/2015 |
| City of Farmington | 11/09/2014 |
| City of Grosse Pointe | 11/09/2014 |
| City of Grosse Pointe Farms | 01/06/1941 |
| City of Grosse Pointe Park | 11/19/2014 |
| City of Hamtramck | 11/19/2014 |
| City of Harper Woods | 11/19/2014 |
| City of Highland Park | 06/08/1983 |
| City of Melvindale | 11/19/2014 |
| Oakland County Evergreen Farmington | 12/30/1958 |
| Oakland County Geo. W. Kuhn Drainage District | 11/01/1962 |
| Oakland-Macomb Interceptor Drain Drainage District | 09/01/2009 |
| Township of Redford | 11/19/2014 |
| Wayne County Area 3 | 07/03/1950 |
| Wayne County Northeast | 01/13/1944 |
| Wayne County Rouge Valley | 08/15/1961 |

| <u>Related Contracts</u> | <u>Date of Contract</u> |
|---|---|
| City of Grosse Pointe Farms<br>    MOU re Sewage Meter Installation | 05/2004 |
| Charter Township of Northville<br>    Agreement re Transfer of Rouge Valley Capacity | 03/18/2004 |
| Oakland County Evergreen Farmington<br>    Agreement for Use of Certain Detroit Sewers | 12/30/1958 |
| Oakland County Geo. W. Kuhn Drainage District | 11/01/1962 |

Agreement for Use of Certain Detroit Sewers

Oakland-Macomb Interceptor Drain Drainage District     01/18/2012
    Construction Agreement Northeast Sewage Pump Station

Charter Township of Plymouth     03/23/2004
    Agreement re Transfer of Rouge Valley Capacity

Wayne County Rouge Valley     08/14/1961
    Agreement for Use of Certain Detroit Sewers

| Wastewater Discharge Ordinance Delegation Agreements | Date of Agreement |
|---|---|
| City of Allen Park | 06/08/1992 |
| City of Auburn Hills | 07/06/1992 |
| City of Berkley | 10/16/1992 |
| City of Beverly Hills | 06/15/1992 |
| Village of Bingham Farms | 05/26/1992 |
| City of Birmingham | 06/08/1992 |
| Charter Township of Bloomfield | 05/26/1992 |
| City of Bloomfield Hills | 09/21/1992 |
| Charter Township of Canton | 07/28/1992 |
| City of Centerline | 11/02/1992 |
| Charter Township of Chesterfield | 04/21/1992 |
| Village of Clarkston | 07/13/1992 |
| City of Clawson | 08/27/1992 |
| Charter Township of Clinton | 04/10/1992 |
| City of Dearborn | 08/31/1992 |
| City of Dearborn Heights | 04/14/1992 |
| City of East Detroit | 04/21/1992 |
| City of Farmington | 05/05/1992 |
| City of Farmington Hills | 06/01/1992 |
| City of Ferndale | 07/13/1992 |
| Village of Franklin | 08/17/1992 |
| City of Fraser | 05/15/1992 |
| City of Garden City | 04/21/1992 |
| City of Grosse Pointe | 09/24/1992 |
| City of Grosse Pointe Farms | 09/14/1992 |
| City of Grosse Pointe Park | 09/21/1992 |
| City of Grosse Pointe Shores | 09/21/1992 |
| City of Grosse Pointe Woods | 04/06/1992 |
| City of Hamtramck | 08/06/1992 |
| City of Harper Woods | 04/20/1992 |
| Charter Township of Harrison | 04/28/1992 |
| City of Hazel Park | 09/14/1992 |
| City of Highland Park | 06/15/1992 |
| City of Huntington Woods | 07/21/1992 |
| Charter Township of Independence | |
| City of Inkster | 04/29/1992 |

| | |
|---|---|
| City of Keego Harbor | 08/20/1992 |
| Village of Lake Orion | 05/26/1992 |
| City of Lathrup Village | 07/06/1992 |
| Township of Lenox | 05/04/1992 |
| City of Livonia | 07/03/1992 |
| Township of Macomb | 04/23/1992 |
| City of Madison Heights | 07/13/1992 |
| City of Melvindale | 09/21/1988 |
| Village of New Haven | 07/14/1992 |
| City of Northville | 04/20/1992 |
| Charter Township of Northville | 08/13/1992 |
| City of Novi | 04/27/1992 |
| Charter Township of Oakland | 09/21/1992 |
| City of Oak Park | 07/24/1992 |
| Charter Township of Orion | 07/20/1992 |
| Village of Oxford | 09/22/1992 |
| Charter Township of Plymouth | 07/07/1992 |
| City of Plymouth | 10/14/2008 |
| City of Orchard Lake Village | 06/15/1992 |
| City of Pleasant Ridge | 10/13/1992 |
| City of Plymouth | 04/06/1992 |
| Charter Township of Redford | 09/21/1987 |
| City of River Rouge | 07/09/1992 |
| City of Rochester | 06/1994 |
| City of Rochester Hills | 06/12/1992 |
| City of Romulus | 05/04/1992 |
| City of Roseville | 04/28/1992 |
| Charter Township of Royal Oak | 03/01/1993 |
| City of Royal Oak | 06/03/1992 |
| City of St. Clair Shores | 04/06/1992 |
| Charter Township of Shelby | 04/13/1992 |
| South Macomb Sanitary District | 03/06/1992 |
| City of Southfield | 07/14/1992 |
| City of Sterling Heights | 06/02/1992 |
| City of Sylvan Lake | 08/13/1992 |
| City of Troy | 04/27/1992 |
| City of Utica | 04/24/1992 |
| Charter Township of Van Buren | 05/05/1992 |
| Township of Washington | 06/11/1992 |
| Charter Township of Waterford | 07/13/1992 |
| City of Wayne | 04/21/1992 |
| Charter Township of West Bloomfield | 07/07/1992 |
| City of Westland | 06/02/1992 |